**Nos. 23-3050**
**United States Court Of Appeals**
**For Eighth Circuit**

Pamela Cole,

Plaintiff–Appellant,

v.

Group Health Plan, Inc.,

Defendant–Appellee.

On Appeal from the United States District Court
for the District of Minnesota

District Court Nos.
0:22-cv-2686-WMW-LIB

## APPELLANT'S REPLY BRIEF

Gregory M. Erickson, 276522
Vincent Fahnlander, 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
*Attorneys for Appellants*
Dated: January 8, 2024

Jody Ward-Rannow (#0387098)
Capella Tower
225 South Sixth Street, Suite 1800
Minneapolis, MN 55402
(612) 339-1818
*Attorneys for Appellee*

# Table of Contents

Table of Authorities ....................................................................................... iii

Introduction ..................................................................................................... 1

Argument .......................................................................................................... 1

1.  Cole pled a plausible claim that HealthPartners' discriminatory
    conduct of creating two classes of employees between the vaccinated
    and the unvaccinated was an adverse employment action against
    Cole ............................................................................................................ 1

    i.   HealthPartners, treated Cole as an unvaccinated employee
         differently from all others because of her sincerely held religious
         beliefs ................................................................................................... 5

    ii.  Whether HealthPartners took adverse employment action against
         Cole is a factual issue inappropriate for a motion to dismiss ............... 6

    iii. HealthPartners asserted facts not within the record—the four
         corners of the complaint—to support its' legal arguments .................... 6

    iv.  HealthPartners' cases are inapposite to support an argument that
         Cole's adverse employment action should be dismissed ....................... 9

2.  Cole did not misstate the district court's decision; the court
    recognized Cole's sincerely held religious beliefs on the one hand,
    and another found Cole did not hold those religious beliefs .................... 13

    i.   The "conflict" Cole cited was not her religious objection to
         "masking" ........................................................................................... 15

    ii.  HealthPartners did not resolve Cole's conflict .................................... 16

    iii. The district court erroneously described HealthPartners' vaccine
         mandate that further led to dismissal of the complaint
         erroneously ......................................................................................... 17

3.  HealthPartners' accommodation HealthPartners offered was not
    reasonable as a matter of law ................................................................. 18

i

    i.  Reasonable accommodation and undue hardship are fact questions that are inappropriate for a motion to dismiss. ................................. 19

    ii.  There is nothing in the present record to support HealthPartners' claim that it would suffer "undue hardship" to accommodate Cole. ........................................................................................... 20

    iii.  HealthPartners' cited authority does not support its positions on accommodation or undue hardship. ..................................... 23

Conclusion ................................................................................. 26

CERTIFICATE OF COMPLIANCE .......................................... 27

CERTIFICATE OF SERVICE ................................................... 28

Appellate Case: 23-3050     Page: 3     Date Filed: 01/09/2024 Entry ID: 5351703

# Table of Authorities

Page(s)

**Cases**

*Antione v. First Student, Inc.,*
713 F.3d 824 (5th Cir. 2013) ............................................................ 19

*Bey v. City of New York,*
999 F.3d 157 (2d Cir. 2021) ............................................................ 24

*Biden v. Missouri,*
595 U.S. 87 (2022) ............................................................................ 21

*Burcham v. City of Los Angeles,*
562 F.Supp.3d 694 (C.D. Cal. Jan.7, 2022) .................................... 12

*Clegg v. Ark. Dep't of Corr.,*
496 F.3d 922 (8th Cir. 2007) ....................................................10, 11

*Does 1-2 v. Hochul,*
2022 WL 4637843 (E.D.N.Y. Sept. 30, 2022) ................................ 24

*Duffy v. McPhillips,*
276 F.3d 988 (8th Cir. 2002) ........................................................... 10

*Groff v. DeJoy,*
600 U.S. 447 (2023) ....................................................................20, 23

*Haliye v. Celestica Corp.,*
717 F. Supp. 2d 873 (D. Minn. 2010) .............................................. 19

*Hamm v. Rhone-Poulenc Rorer Pharms., Inc.,*
187 F.3d 941 (8th Cir. 1999) ............................................................. 9

*Harlston v. McDonnell Douglas Corp.,*
37 F.3d 379 (8th Cir. 1994) ............................................................. 11

*Hartman v. Bowles,*
39 F.4th 544 (8th Cir. 2022) .............................................................. 6

Appellate Case: 23-3050      Page: 4      Date Filed: 01/09/2024 Entry ID: 5351703

*Herring v. Winston-Salem/Forsyth Cnty. Bd. Of Educ.,*
656 S.E.2d 307 (N.C. App. 2008) ................................................................. 9

*Huynh v. United States DOT,*
794 F.3d 952 (8th Cir. 2015) ................................................................... 8, 9

*Jones v. TEK Indus., Inc.,*
319 F.3d 355 (8th Cir.2003) ..................................................................... 19

*Lowe v. Mills,*
2022 WL 3542187 (D. Maine. Aug. 18, 2022) ............................................ 24

*Maroko v. Werner Enterprises, Inc.,*
778 F.Supp.2d 993 (D. Minn. 2011) .......................................................... 19

*McWright v. Alexander,*
982 F.2d 222 (7th Cir. 1992) ..................................................................... 19

*Ollis v. HearthStone Homes, Inc.,*
495 F.3d 570 (8th Cir. 2007) ....................................................................... 1

*Patrick v. Henderson,*
255 F.3d 914 (8th Cir. 2001) ....................................................................... 6

*Rester v. Stephens Media*, LLC,
739 F.3d 1127 (8th Cir. 2014) ................................................................. 6, 11

*Stahl v. U.S. Dep't of Agric.,*
327 F.3d 697 (8th Cir. 2003) ....................................................................... 8

*Sturgill v. United Parcel Service, Inc.,*
512 F.3d 1024 (8th Cir. 2008) ............................................................... 19, 23

*Trans World Airlines, Inc. v. Hardison,*
432 U.S. 63 (1977) ................................................................................... 23

*Wagner v. Campbell,*
779 F.3d 761 (8th Cir. 2015) ..................................................................... 10

*Wilson v. U.S. W. Commc'ns,*
58 F.3d 1337 (8th Cir. 1995) ..................................................................... 23

Appellate Case: 23-3050     Page: 5     Date Filed: 01/09/2024 Entry ID: 5351703

*Young v. City of St. Charles, Mo.,*
    244 F.3d 623 (8th Cir. 2001) ....................................................................1, 8, 24

**Regulations**

*Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination,*
    86 FR 61555-01 ......................................................................................21, 24

Appellate Case: 23-3050    Page: 6    Date Filed: 01/09/2024 Entry ID: 5351703

## Introduction

The Appellant Pamela Cole provides this brief reply to the Appellees arguments. Appellee Group Health Plan, Inc. (HealthPartners), had previously represented to the district court that the first two elements to determine religious discrimination under *Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570, 575 (8th Cir. 2007) were met. Hence, the only issue before the court was the claim of adverse employment action. However, Group Health has improperly resurrected the issue of Cole's sincerely held religious beliefs, as did the district court. *See,* HealthPartners Br. at 11.

## Argument

**1. Cole pled a plausible claim that HealthPartners' discriminatory conduct of creating two classes of employees between the vaccinated and the unvaccinated was an adverse employment action against Cole.**

HealthPartners argues Cole failed to establish sufficient facts for an adverse employment action claim. HealthPartners Br., 11-15. The district court held the same: "HealthPartners [did not] take any adverse employment actions against Cole because of her religion." App. 9; R. Doc. 19, at 9. To the contrary, Cole pled facts, if taken as true, to establish the necessary factual elements to survive a motion to dismiss, *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001), *as corrected* (Mar. 27, 2001), *as corrected* (May 1, 2001) (internal citations omitted).

1

To begin, Cole asserted that because of her sincerely held religious beliefs she could not take the Covid-19 vaccines (App. 14-15; R. Doc. 1, at 1-2 (¶ 2)). Because she did not take the vaccine, Cole was categorized and placed into a class of employees distinguished as "unvaccinated" and specifically and intentionally labeled by the employer in a discriminatory fashion, and denied a "Badge Lock". *Id.* (¶¶ 16-17, 19-20). Cole alleged that her religious beliefs precluded vaccination, and because she was unvaccinated, she was prevented from obtaining the Badge Lock, which led to discriminatory treatment.

Despite HealthPartners granting Cole a religious exemption to vaccination (*Id.* (¶¶ 2, 27)), it subjected her to different treatment than vaccinated employees, including the Badge Lock system. HealthPartners thus intentionally created two separate classes of employees, where Cole as an unvaccinated employee, was mandated to dress differently than vaccinated employees, to wear protective gear when vaccinated employees were not similarly required to wear protective gear (App. 14-15, 18; R. Doc. 1, at 1-2, 5 (¶¶ 2, 14)), to disclose medical information,[1] and be reassigned to different areas. *Id.* (¶¶ 14-20). All of this exposed her to criticism and differential treatment. *Id.* (¶¶ 15-17, 19-20, 27).

---

[1] The disclosure of medical information to their superiors included "the [vaccination] status" and Plaintiff's "exemption request (approved or denied) will be available to my leader." *Id.* (¶ 15).

Furthermore, HealthPartners employees would lose their job if they failed to become vaccinated or agreed to the additional terms and be distinguished based on whether they wore the Badge Lock or not. *Id.* (¶ 20). HealthPartners specifically intended the Badge Locks to be a public indication of vaccination status. *Id.* (¶ 19); *see also id.* (¶¶ 50, 52). HealthPartners intended that the lack of a Badge Lock draw attention to Cole as unvaccinated and ill-suited to perform her work duties, and to bring scorn and ridicule within the workplace.[2]. *Id.* (¶ 2).

HealthPartners, as Cole pled, mandated that the "Badge Locks must be worn for colleagues to remove their masks in administrative facilities and non-patient care areas of our hospitals and clinics," and that unvaccinated employees were not permitted to remove their masks in those areas of "[Defendant's] hospitals and clinics." *Id.* (¶ 16). As a member of HealthPartners' created class of the unvaccinated, the absence of the Badge Lock drew immediate attention from others, as intended, and targeted. Without the Badge Lock, the unmasked were identified as unvaccinated, and targeted for criticism for refusing to take the COVID-19 vaccine. *Id.* (¶ 18). HealthPartners required members of the "Badged" class of employees to mask-up when unvaccinated employees entered a room, resulting in the vaccinated class complaining about the unvaccinated forcing the vaccinated to take extra precautions. To avoid the HealthPartners-created hostile work environment and avoid the peer

---

[2] As the complaint alleged, similar scorn and ridicule swept the country from the President down to the media, entertainers, politicians and medical community.

pressure, shame, and ridicule, and because HealthPartners did nothing to address Cole's concerns, Cole took her own action, such as attending meetings via Zoom, instead of in person. *Id.* (¶ 17).

If employees sought a religious or medical exemption, they had to agree to "observe additional infection prevention/source control measures," including "being reassigned to a different patient care area or other work setting [...]." *Id.* (¶ 14) (emphasis removed). Cole's exemption status is known to all employees and staff, by virtue of her not having the Badge Lock, and by not being permitted to remove her mask "in administrative and non-patient care areas" of HealthPartners' "hospitals and clinics." *Id.* (¶ 27).The distinctions brought about by the Badge Locks purposefully created a hostile work environment ripe for "embarrassing unvaccinated employees and making them feel separate from their colleagues." *Id.* (¶ 52).

Cole also pled that there was no reason for the Badge Lock system to discriminate between vaccinated and unvaccinated employees because the Covid-19 vaccines did "not prevent infection or transmission" of the Covid-19 virus, and the White House Covid-19 Response director knew "these vaccines were not going to protect against infection," and that "we overplayed the vaccines." App. 22-23; R. Doc. 1, at 9-10 (¶¶ 33-41). Accordingly, Cole pled that she suffered an adverse employment action. Cole Br., 9-11, 19-21.

4

### i. HealthPartners, treated Cole as an unvaccinated employee differently from all others because of her sincerely held religious beliefs.

HealthPartners argues that "Cole has not alleged any facts to show that she was treated differently than similarly situated employees who do not share her religious beliefs." HealthPartners Br., 7. "Her claims fail to allege that she was treated differently *because of* her religion." HealthPartners Br., 10 (emphasis in original).

HealthPartners' argument is misplaced. Cole's allegations sufficiently plead facts for a plausible claim as it relates to her religious beliefs. Specifically, employees who did not share Cole's religious beliefs did not object to the vaccine, took the vaccine instead, and got the Badge Lock. App. 14-15, 18; R. Doc. 1, at 1-2, 5 (¶¶ 1-2, 14) ("if employees sought a religious … exemption, they had to agree to being treated discriminatorily"); *Id.* (¶ 15) ("In exchange for receiving a religious exemption, unvaccinated employees were also forced to consent to disclosing medical information"); *Id.* (¶¶ 16-20, 23, 27) ("Cole did receive a religious exemption, but has been treated differently"); *Id.* (¶¶ 45, 53) (Cole has sincerely held religious beliefs which prevented her from receiving the vaccine and HealthPartners discriminated against her by failing to accommodate her). As a result, other employees who did not share Cole's religious beliefs were not treated discriminatorily, as was Cole.

Appellate Case: 23-3050   Page: 11   Date Filed: 01/09/2024 Entry ID: 5351703

### ii.    Whether HealthPartners took adverse employment action against Cole is a factual issue inappropriate for a motion to dismiss.

Cole pled a plausible adverse employment action sufficient to defeat a motion to dismiss.  Additionally, this is a fact issue that should not even be decided at the motion to dismiss stage.  *See* Cole Br., 16-18.  In HealthPartners own briefing, it suggests that a fact issue exists. For instance, it disputes Cole's version of the facts and HealthPartners's characterization of its intention regarding the treatment of its created two classes of employees. HealthPartners argues that it did not discriminate because of Cole's religious beliefs, relying on the exemption given.  However, as Cole, alleged, there is more to the exemption as pled. Whether an action constitutes an "adverse employment action is a fact issue that is rarely appropriate for Rule 12 resolution." *Patrick v. Henderson*, 255 F.3d 914, 916 (8th Cir. 2001); *see also Rester v. Stephens Media, LLC*, 739 F.3d 1127 (8th Cir. 2014) (holding whether an adverse employment action occurred is dependent upon what a "reasonable employee" would consider to be an adverse employment action).  Therefore, dismissal at a motion to dismiss was improper.

### iii.    HealthPartners asserted facts not within the record—the four corners of the complaint—to support its' legal arguments.

On a Rule 12(b)(6) motion, the court's inquiry "is limited to the facts alleged in the complaint, which we accept as true and view most favorably to the plaintiff." *Hartman v. Bowles*, 39 F.4th 544, 545 (8th Cir. 2022) (cleaned up). Although stated in

HealthPartners summary of its legal argument, it served to contaminate the record in lieu of existing factual allegations. For example, HealthPartners argued: "Cole does not dispute that there were unvaccinated employees with medical exemptions," yet, Cole made no such concessions. HealthPartners Br. At 7.[3] Likewise, HealthPartners asserted that Cole "does not dispute that unvaccinated employees with medical exemptions were treated the same as unvaccinated employees with religious exemptions." HealthPartners Br. at 7. There is nothing in the record to support this assertion.

HealthPartners claimed that "Cole alleges that similarly situated employees (medically-exempted employees) were treated the same as her […]." HealthPartners Br. at 7-8. Again, Cole made no such allegation and nothing is in the record or cited to support this "fact."

HealthPartners, again, without any citation to an existing record, argued: "Plaintiff's secular preference to not observe heightened Covid-19 infection protocols is required by the rule." HealthPartners Br. at 25. But, Cole specifically pled she was willing to engage in an interactive process to work on accommodation. App. 24-25; R. Doc. 1, at 11-12 (¶¶ 50-52). HealthPartners does not say which "heightened Covid-19 protocols" Cole refused to "observe." Cole did not object to "masking" as HealthPartners argued. Cole has argued that requiring her to mask in situations where

---

[3] Indeed, HealthPartners made no effort to cite to the record to support its "factual" statements.

7

the vaccinated did not have to mask, and thus led directly to religious discrimination, was the violation. *Id.* (¶¶ 2, 15-20). HealthPartners does not identify which "rule" requires the compliance HealthPartners has in mind. The Center Medicare and Medicaid Services ("CMS") rules specifically obligated entities such as HealthPartners to recognize religious objections, and to grant religious exemptions according to federal law such as Title VII. *See* HealthPartners Br., 22 (citing *Revised Guidance for Staff Vaccination Requirements*, Centers for Medicare & Medicaid Services, Ref: QSO-23-02-All, pp.41-42 (Oct. 26, 2022), https://www.cms.gov/files/document/qs0-23-02-all.pdf (last visited 1/8/2024 (quoting CMS mandate which states: "[t]he [COVID] policy must also ensure those staff […] who have been granted an exemption or accommodation as authorized by law […] adhere to additional precautions […].").

All of HealthPartners' unsupported allegations are relevant inquiries for discovery, but none are presently in the record. Accordingly, HealthPartners own argument calls for further discovery and hence, the denial of a motion to dismiss. At a motion to dismiss, only the pled facts and documents can be considered, the truth of Cole's allegations is presumed, and all inferences are construed in Cole's favor. *Young*, 244 F.3d at 627. HealthPartners has no facts to support its argument, and Cole affirmatively pled facts in opposition to HealthPartners' position. But, the factual conflicts are also apparent and require reversal, discovery, and summary judgment (if not trial).

8

### iv.     HealthPartners' cases are inapposite to support an argument that Cole's adverse employment action should be dismissed.

HealthPartners cited *Huynh v. United States DOT*, 794 F.3d 952, 958 (8th Cir. 2015) for the proposition that Cole did not plausibly plead an adverse employment action. HealthPartners Br. at 11-12. However, *Huynh* was decided at *summary judgment,* after discovery, and not at a motion to dismiss.[4]  *Huynh* involved an applicant for air traffic control school who repeatedly failed the training, despite being given extra classroom and simulation training, new supervisors, and additional time and resources to complete the training. Despite these benefits, plaintiff did not get the job and claimed race discrimination, because he was Asian-American. This Court affirmed the district court decision granting summary judgment to the employer, holding that employee plaintiff did not prove an "adverse employment action." This Court opined that the employee's "request for more training," after all of the assistance

---

[4] The standards at a motion to dismiss and summary judgment are different. *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700-01 (8th Cir. 2003) (reasoning that considering matters outside the pleadings converts a motion to dismiss into summary judgment) (internal citations and quotation marks omitted); *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (explaining that a motion to dismiss should be treated as motion for summary judgment when counsel "relie[s] upon facts outside of the four corners of the complaint during oral argument […].") (internal citations and quotation marks omitted); *Herring v. Winston-Salem/Forsyth Cnty. Bd. Of Educ.*, 656 S.E.2d 307, 311 (N.C. App. 2008) ("The only difference between a Rule 12(b)(6) motion and a summary judgment motion is that the trial court decides the former on the complaint alone, while the trial court may receive and consider other evidence when ruling on the latter, as the trial court did in the present case.") (internal citations omitted). HealthPartners wrongfully attempts to argue the standards are the same, and to introduce extrinsic evidence of what they allege the CMS mandate requires. *See* HealthPartners Br., 18-19, fn 3.

Appellate Case: 23-3050     Page: 15     Date Filed: 01/09/2024 Entry ID: 5351703

already provided, and the "denial of a positive recommendation letter" did not constitute an "adverse employment action." *Huynh*, 794 F.3d at 959. This Court concluded that the only "adverse employment action" was his termination from the training program, which was justified. *Huynh*, 794 F.3d at 959. In dicta, in the context of the *Huynh* facts, this Court stated, "not everything that makes an employee unhappy is an actionable adverse employment action." *Huynh*, 794 F.3d at 959.

HealthPartners' additional cases also do not support its argument, and *Wagner v. Campbell*, 779 F.3d 761 (8th Cir. 2015) actually helps Cole. *Wagner* held, again at *summary judgment*, that "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. This might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects." *Wagner*, 779 F.3d at 766 (citing *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007) (internal marks and quotations omitted)). This Court in *Wagner*, did not claim to provide an *exhaustive list* of what is necessary at a motion to dismiss to set forth a *plausible* claim of an adverse employment action, but rather listed some things that "might" be included. Cole sufficiently pled a plausible claim.

Cole alleged much more than plaintiff in *Wagner*, including facts demonstrating a "tangible change in working condition that produces a material employment disadvantage." She pled that HealthPartners' policy resulted in harassment, scorn, ridicule, and a difference in treatment in workspaces and meetings. Her allegations

plausibly infer, among other things, that her "future career prospects" may be negatively affected. Thus, *Wagner* does not support dismissal of Cole's claims.

HealthPartners' remaining cases also fail to support its argument. In *Duffy v. McPhillips*, 276 F.3d 988, 992 (8th Cir. 2002), this Court affirmed the district court's granting of summary judgment holding that minor shifts in employment responsibility did not significantly alter the conditions of Duffy's employment, and therefore did not constitute an adverse employment action. Cole identified how her work conditions altered her employment from being regulated to or excluded from certain areas of the hospital preventing her from performing her normal duties, as well as, the need to stay away from personally engaging in departmental meetings. HealthPartners also cited the summary judgment cases *Clegg*, 496 F.3d 922; *Rester*, 739 F.3d 1127; and *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379 (8th Cir. 1994), for the proposition that the key question is whether a *reasonable* employee would have found the employer's action to be materially adverse. The inquiry into what a "reasonable employee" would find is an express acknowledgment of the quintessential fact question and, although proper to consider at summary judgment when parties have had an opportunity for full discovery, it is improper to consider at a motion to dismiss. In *Clegg*, this Court affirmed a summary judgment decision that slight changes in job responsibilities after plaintiff returned from military service was not adverse employment action. *Clegg*, 496 F.3d at 927. Again, Cole pled more than "slight changes." In *Rester*, this Court applied at summary judgment application of a

"reasonable person" (i.e. fact issue) standard for determining adverse employment action, and conducted a fact-specific inquiry and determined the plaintiff had not met the burden to prove her claims. *Rester*, 739 F.3d at 1131-32. In *Harlston*, the district court ruled against the plaintiff at summary judgment because she failed to show evidence to prove her claim. *Harlston*, 37 F.3d at 382-83.

The cases HealthPartners relies upon are summary judgment cases where the district court was able to rule on the facts with the benefit of full discovery. The district court erred in this case because the procedural posture is a motion to dismiss and Cole adequately plead facts, which HealthPartners has argued are in dispute. Hence, the district court erred in granting HealthPartners' motion to dismiss.

HealthPartners also cited *Burcham v. City of Los Angeles*, 562 F.Supp.3d 694, 708 (C.D. Cal. Jan.7, 2022) for the proposition that Cole failed to plead "adverse action." HealthPartners Br. at14-15. In *Burcham*, the plaintiffs sued for a preliminary injunction anticipating that failure to vaccinate may, in the future, result in adverse employment action. The plaintiffs only alleged "they have submitted requests for religious exemptions." The *Burcham* court held that the plaintiffs' complaint never stated their requests were denied or likely to be denied, hence, had not plausibly alleged that the defendants had discriminated, or threatened to discriminate against them. *Id.* at 708. However, the court did allow the plaintiffs to amend their complaint to plead an adverse employment action. *Id.* Thus, *Burcham*'s holding is

12

limited and of very little significance to Cole's case in which she did plausibly allege discrimination.

### 2. Cole did not misstate the district court's decision; the court recognized Cole's sincerely held religious beliefs on the one hand, and another found Cole did not hold those religious beliefs.

HealthPartners argues the district court *did* recognize Cole's sincerely held religious beliefs, which is true, but then the district court also ruled that Cole *did not* set forth a sincerely held religious belief. The district court held that "Cole *makes no claim* that the Vaccine Mandate program and the badge lock system conflict with her genuinely held religious beliefs." App. 6; R. Doc. 19, at 6 (emphasis added).

HealthPartners argues Cole, in pointing out this inconsistency, has misrepresented the district court's decision. HealthPartners Br., 15-17. However, the district court did hold both ways on this issue, rendering its decision inconsistent at best requiring a reversal.

While acknowledging on the one hand that the first two *Jones* elements were *not* at issue because of HealthPartners' admissions, namely that Cole had a bona fide religious belief and communicated it with HealthPartners (*see* App. 5; R. Doc. 19, at 5), the district court then contradicted itself declaring Cole "fail[ed] to allege a bona fide religious belief." App. 8; R. Doc. 19, at 8. The court then used its holding that this failure to "allege a bona fide religious belief that conflicts with an employment requirement" meant that HealthPartners did not "take any adverse employment

13

actions against Cole because of her religion." App. 8-9; R. Doc. 19, at 8-9. The district court erred:

> Because Cole " neither alleges nor argues that the accommodation-requirements option conflicts with her religious obligations…" or "acknowledge[ing] that she was given an alternative that did not conflict with her religious observances, **Cole acknowledges that she has not alleged a bona fide religious belief that conflicts with an employment requirement**."

*Id.* at 7 (emphasis added).

Cole did no such thing: she did not "acknowledge" that she "has not alleged a bona fide religious belief that conflicts with an employment requirement." To the contrary, Cole pled the opposite—she "objected to receiving the vaccinations because of [her] sincerely-held religious beliefs." App. 14, 20, 24; R. Doc. 1, at 1, 7, 11 (¶ 1, 23, 45-46). Cole specifically pled facts supporting her sincerely-held religious beliefs, and communicated them to HealthPartners. *Id.* (¶¶ 1, 2, 23, 29, 45-46, 59-60). HealthPartners even "granted [Cole's] request for the religious exemptions," *Id.* (¶ 2, 27), but then discriminated against her. It would be odd for HealthPartners to have granted Cole a religious exemption without accepting and acknowledging Cole's sincerely held religious beliefs. HealthPartners' granting of the religious exemption is proof itself. The district court erroneously stated Cole's position, and then hinged its dismissal on this error.

14

### i. The "conflict" Cole cited was not her religious objection to "masking".

HealthPartners argues masking "is the employment requirement she [Cole] actually disputes in this case." HealthPartners Br., 16. This misrepresents Cole's position.

Cole's argument is that she objected to *the vaccine* for *religious reasons*, and as a result, she was denied wearing a Badge Lock. App. 14-15, 18-20; R. Doc. 1, at 1-2, 6-7 (¶¶ 1-2, 16-20). HealthPartners has conceded that Cole was precluded from obtaining the Badge Lock: "Unvaccinated employees [such as Cole] could not complete the administrative process to obtain and wear the badge lock," and the district court agreed. HealthPartners Br., 4-5; App. 2; R.Doc. 19, at 2. It was because Cole, as an unvaccinated employee, could not wear the Badge Lock, that Cole pled she was discriminated against. App. 18-21; R. Doc. 1, at 6-8 (¶¶ 16-20, 27). It was not because Cole objected to wearing a mask.

HealthPartners' argument that Cole's opposition is to "masking" is a straw man argument. HealthPartners Br., 2 ("Appellant does not have any religious objections to wearing a mask"); *Id.* at 6-7, 15-17, 19 ("Cole admits that she does not have a religious objection to masking."). HealthPartners made up the straw man argument to demolish.

Further, HealthPartners refers to Coles' objection as a "secular preference" (HealthPartners Br., 25), but Cole specifically pled that it was her religious beliefs that precluded her from receiving the vaccine, not a "secular preference." App. 14-15, 17-18, 20; R. Doc. 1, at 1-2, 4-5, 7 (¶¶ 1-2, 13, 21, 23). Because she did not get the vaccine, Cole did not get the Badge Lock. As a result of not getting the Badge Lock, she was marked for discriminatory treatment. *Id.* (¶¶ 17-20, 27).

### ii. HealthPartners did not resolve Cole's conflict.

HealthPartners also argued that the conflict involving Cole's religious objections was "resolved." *Id.* at 16. This is directly contrary to Cole's factual allegations. Cole never agreed that the conflict over the vaccination requirement and Badge Lock system was "resolved," and in fact pled the opposite. Cole pled she "has been treated differently" (App. 20-21; R. Doc. 1, at 7-8 (¶ 27)); she filed a charge of religious discrimination (*Id.* (¶ 28));she submitted to HealthPartners a "good-faith statement of her sincerely held religious beliefs," that HealthPartners "never considered allowing Plaintiff to be accommodated," (*Id.* (¶ 30)), that HealthPartners "refused to engage in the interactive process;" (*Id.* (¶ 51)), and HealthPartners implemented its policies, including the Badge Lock policy "for the sole purpose of embarrassing unvaccinated employees" such as Cole. *Id.* (¶ 52). HealthPartners' argument of some sort of "resolution" is unsupported and unsupportable.

16

The Badge Lock policy conflicted with Cole's sincerely held religious beliefs; the conflict was not "masking," and the conflict was not "resolved," or "accommodated."

### iii.    The district court erroneously described HealthPartners' vaccine mandate that further led to dismissal of the complaint erroneously.

The district court also held that "HealthPartners did not mandate Cole or any other employee to receive the Covid-19 vaccine." App. 5-6; R. Doc. 19, at 5-6. This characterization of the underlying facts appears to be result oriented. First, HealthPartners' Vaccine Mandate did *require* vaccination. App. 14, 17-18, 21-22, 24-25; R. Doc. 1, at 1, 4-5, 8-9, 11-12 (¶¶ 1, 13, 31, 33, 50). And, Cole pled that in "August 2021, HealthPartners mandated that all its employees receive the Covid-19 vaccination as a condition of continuing their employment." ("Vaccine Mandate"). App. 14, 17-18; R. Doc. 1, at 1, 4-5 (¶¶ 1, 13). HealthPartners own Vaccine Mandate "require[d] l Covid-19 [...] vaccination for all colleagues." *Id.* (¶ 13) (emphasis removed). "Colleagues will have until Oct. 29, 2021 (for Covid-19) ... to become fully vaccinated or document their declination." *Id.* HealthPartners' requirement included that employees must be "up-to-date on vaccinations," meaning the "Covid-19 vaccine primary series and the Covid-19 bivalent booster." *Id.* (¶ 31). Vaccination was required, or if vaccination was refused, the Badge Lock system came into effect, which led to Cole's claim of discrimination.

### 3. HealthPartners' accommodation HealthPartners offered was not reasonable as a matter of law.

HealthPartners argued in support of the district court's decision that the accommodation HealthPartners offered, "resolved any conflict between Cole's religion and her job," (*Id.* at 6), and "HealthPartners provided a reasonable accommodation to Cole." *Id.* at 17. The district court concluded that even "assuming HealthPartners had a duty to accommodate Cole's religious beliefs, it discharged that obligation by permitting Cole to wear a mask or other additional personal protective equipment at all times […]." App. 7; R. Doc. 19, at 7.

Cole pled extensively that HealthPartners did not consider reasonable accommodations, or engage in an interactive process to try to resolve continuing to employ Cole without the discriminatory actions. App. 17, 21, 24-25; R. Doc. 1, at 4, 8, 11-12 (¶¶ 11, 30, 32, 50-52). She pled there is no evidence that *voluntary* vaccination did not work, (*Id.* (¶ 32)) and therefore it is not established that HealthPartners' "accommodation" was reasonable as a matter of law or that HealthPartners met the rigorous "undue hardship" standard. Cole argued the HealthPartners "accommodation"—the Badge Lock system—was itself unreasonable and promoted the discrimination alleged in her Complaint.

HealthPartners' argument is circular: "as a matter of law, the religious exemption accommodation is 'reasonable.'" HealthPartners Br., 18, 23. Its argument

is essentially that the accommodation is reasonable because HealthPartners says so. But, Cole pled the opposite: that HealthPartners did not accommodate Cole; HealthPartners did not "eliminate" the conflict, but exacerbated it; and the Badge Lock system was not reasonable. App. 14-15, 18-21; R. Doc. 1, at 1-2, 5-8 (¶¶ 2, 15-20, 27). HealthPartners made no effort to engage in an interactive process to understand Cole's religious beliefs or how to accommodate them. *Id.* (¶¶ 30, 51-52). Cole pled that she was subjected to discriminatory treatment as a result of not being able to wear the Badge Lock. For purposes of a motion to dismiss, Cole's allegations must be accepted as true.

### i. Reasonable accommodation and undue hardship are fact questions that are inappropriate for a motion to dismiss.

The question of the reasonableness of HealthPartners' "accommodation" of Cole's religious objections to the Vaccine Mandate, and whether any different accommodation constitutes an "undue burden" under Title VII, are questions of fact not suitable for determination on a motion to dismiss. As courts have recognized, the "unanimous weight of authority" "indicates that the 'reasonableness of any given accommodation is a fact-intensive inquiry that depends on the totality of the circumstances.'" *Maroko v. Werner Enterprises, Inc.,* 778 F.Supp.2d 993, 1002 (D. Minn. 2011) (citing *Jones v. TEK Indus., Inc.,* 319 F.3d 355, 359 (8th Cir.2003)) at 1002 (denying employer's motion for summary judgment on the basis that the "reasonableness" of employer's "accommodation" was a fact issue) (citing *Haliye v.*

19

*Celestica Corp.*, 717 F. Supp. 2d 873, 878 (D. Minn. 2010)); *see also Antione v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013) ("Whether an accommodation is reasonable is a question of fact."); *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992) ("As for the balance between 'reasonable accommodation' and 'undue hardship,' these matters are questions of fact and thus generally inappropriate for resolution on the pleadings.").

This Court has held that the reasonableness of a proposed accommodation "is a question for the jury because it turns on fact-intensive issues such as work demands [and] the strength and nature of the employee's religious conviction." *Sturgill v. United Parcel Service, Inc.*, 512 F.3d 1024, 1033 (8th Cir. 2008). "What is reasonable depends on the totality of the circumstances." *Id.* at 1030. The district court's dismissal should be reversed because it was error to decide at a motion to dismiss, that as a matter of law, HealthPartners' "accommodation" was reasonable.

### ii. There is nothing in the present record to support HealthPartners' claim that it would suffer "undue hardship" to accommodate Cole.

HealthPartners argues "Cole's desired accommodation to not vaccinate and not follow CMS requirements[5] for heightened infection prevention measures would be an undue hardship as a matter of law." HealthPartners Br., 23. This is not the law according to the United States Supreme Court in *Groff v. DeJoy*, 600 U.S. 447 (2023).

---

[5] There is nothing in the record to support HealthPartners' assertion that Cole would "not follow CMS requirements."

The standard from *Groff* is that to prove undue hardship "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff,* 600 U.S. at 470. "What is most important is that 'undue hardship' in Title VII means what it says, and courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner that it would use in applying any such test." *Id.* at 471.

HealthPartners has to do much more than simply declare its accommodation to be reasonable, and accommodating Cole's religious beliefs to be an "undue burden." HealthPartners has the burden of proof ("an employer must show"). *Id.* at 470. Cole specifically pled she could have been accommodated, but was not accommodated. App. 21, 24-25; R. Doc. 1, at 8, 11-12 (¶¶ 30, 50-52). There is nothing in the record to establish that accommodating Cole "would result in substantial increased costs in relation to the conduct of its [HealthPartners'] particular business." Since HealthPartners has pled no facts, there is absolutely nothing in the record to establish that its accommodation was "reasonable," or that any other or different accommodation would be an "undue hardship." There is no "cost" information at all in the record. HealthPartners has not proven "undue hardship" as a matter of law, and especially not at a motion to dismiss.

HealthPartners incorrectly asserted that accommodating Cole would have required HealthPartners to "violate a federal agency rule to appease the plaintiff's

21

[Cole] secular preference to not observe heightened Covid-19 infection protocols required by the rule." HealthPartners Br., 25. HealthPartners has not specified the exact "federal agency rule" it would violate by accommodating Cole. The "federal agency rule" HealthPartners generally referred to actually requires HealthPartners to recognize the religious objections and Title VII rights of its employees.

In *Biden v. Missouri*, 595 U.S. 87, 91 (2022) the Supreme Court held that the new CMS rules "requires providers to offer medical and religious exemptions." (citing *Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination*, 86 FR 61555-01, 61571-61572). The CMS rules therefore require consideration of employees' religious objections, and an employee's assertion of a religious objection is not a violation of the regulation. "We require that providers and suppliers included in this IFC establish and implement a process by which staff may request an exemption from Covid-19 vaccination requirements based on an applicable Federal Law." The referenced Federal Law includes Title VII. *Id.* at 61572.

Further, the "federal agency rules" HealthPartners cited provides HealthPartners with "discretion" to choose mitigation methods to prevent transmission and spread of Covid-19.[6] The agency rule "is not explicit and does not specify which actions must be taken." *See* HealthPartners Br., 22 (citing *Revised*

---

[6] Cole pled that the CDC itself, and the White House admitted that the Covid-19 vaccines did not stop infection or transmission. App. 21-22; R. Doc. 1, at 8-9 (¶ 33). Cole also pled that as a result of the Covid-19 vaccine's ineffectiveness, it was not job related or a business necessity. *Id.* (¶ 52).

Appellate Case: 23-3050     Page: 28     Date Filed: 01/09/2024 Entry ID: 5351703

*Guidance for Staff Vaccination Requirements*, Center for Medicare & Medicaid Services, Ref: QSO-23-02-All, p.40 (Oct. 26, 2022), https://www.cms.gov/files/document/qs0-23-02-all.pdf (last visited 1-8-2024).  Because the discretionary precautions referenced in the regulations do not set out exact actions medical employers must take, HealthPartners' policy cannot be deemed as a matter of law the only reasonable accommodation.  There was no requirement in the CMS regulations that HealthPartners implement the Badge Lock system that led directly to religious discrimination against Cole.  Certainly, the "accommodation" cannot include actions that violate Title VII, or actions based on a mob mentality.

### iii.  HealthPartners' cited authority does not support its positions on accommodation or undue hardship.

The most "apposite" case that HealthPartners cited in support of its argument is *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977).  HealthPartners Br. At 3.  But, *Hardison* was unanimously overruled by *Groff*, and therefore cannot be cited as support for HealthPartners' position.  In *Groff* the Supreme Court confirmed the employer has the burden of proof to prove undue hardship: "an employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, 600 U.S. at 471.  The burden is on HealthPartners to prove undue hardship, and there is nothing in the record to support that HealthPartners has met its burden.

23

HealthPartners also cited *Wilson v. U.S. W. Comm'ns*, 58 F.3d 1337, 1340 (8th Cir. 1995), where the district court concluded that the employer's accommodation of plaintiff's religious views was "reasonable as a matter of law." But *Wilson* was decided after a trial, so is not authority for such a decision at a motion to dismiss.

HealthPartners cited *Sturgill* for the "reasonable as a matter of law" argument. However, *Sturgill* was a decided after a jury trial, where the factual record had been developed, and it was also decided before *Groff*. *Sturgill*, 512 F.3d at 1027. That is not the case here, as Cole pled the "accommodation" HealthPartners implemented (the Badge Lock system) actually created, or exacerbated the discrimination, and also no discovery has occurred. App. 14-15, 18-21; R. Doc. 1, at 1-2, 5-8 (¶¶ 2, 15-20, 27).

HealthPartners has cited *Bey v. City of New York,* 999 F.3d 157, 168 (2d Cir. 2021) as support for its argument that Cole's proposed accommodation violated a federal agency safety regulation. HealthPartners Br. at 25. *Bey* was a summary judgment decision, where there has been discovery and the court is not obligated to "accept" as true all allegations, and to accept "all reasonable inferences from the complaint" in "favor of the nonmoving party." *Young*, 244 F.3d at 627. Further, the safety regulation at issue in *Bey* did not expressly give "discretion" to the providers as to whether to require vaccines or not, as the CMS rules did. Nor did the regulation acknowledge that the "safety" method at issue in that case was questionable, as the

24

effectiveness of the vaccine at issue in this case was acknowledged and at least questioned in the regulations.[7]

The other cases HealthPartners cited for support of its' argument that accommodating Cole would constitute an "undue burden" were both from 2022 (*Lowe v. Mills*, 2022 WL 3542187 (D. Maine. Aug. 18, 2022)); *Does 1-2 v. Hochul*, 2022 WL 4637843 at *15-16 (E.D.N.Y. Sept. 30, 2022)), and therefore were pre-*Groff* (*Groff* was decided June 29, 2023). Accordingly, neither are instructive because the standard from *Groff* is completely different.

Moreover, none of the cases HealthPartners cited involve a vaccination requirement, where an exemption was granted, but then the plaintiff with the sincerely held religious objection to vaccination was precluded from wearing a Badge Lock, and then the absence of the Badge Lock led directly to religious discrimination.

Resolving HealthPartners' contentions concerning any purported hardship was inappropriate, and the district court's decision should be reversed.

---

[7] The CMS recognized uncertainty as to the vaccines' effectiveness, which Cole also pled (Compl. ¶¶33-41). *See, 86 Fed. Reg. at 61615 (Nov. 5, 2021)* (acknowledging that "the duration of vaccine *effectiveness in preventing Covid-19, reducing disease severity, reducing the risk of death, and the effectiveness of the vaccine to prevent disease transmission by those vaccinated are not currently known*." Additional language in the Federal Register reaffirms the unknowns related to the vaccines: "[a]lthough at this time *data* to show the effectiveness of Covid-19 vaccines to prevent asymptomatic infection or transmission of SARS-CoV-2 *are limited …*", and "HCP [health care providers] vaccination *can potentially* reduce illness …", and "we *believe* HCP Covid-19 vaccination in hospitals *could* similarly increase uptake among that patient population." *86 Fed. Reg. 61562, 61565, 61602, 61609, 61612, 61614. (emphasis added).*

## Conclusion

For all of these reasons, the district court's order should be reversed.

Dated:  January 8, 2024.

s/Gregory M. Erickson
Gregory M. Erickson, 276522
Vincent J. Fahnlander 19220X
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Email: erickson@mklaw.com
Email: fahnlander@mklaw.com
*Attorneys for Appellants*

26

## CERTIFICATE OF COMPLIANCE
## WITH FED. R. APP. P. 32 (a)(7)

The undersigned certifies that the Brief submitted herein contains 6,109 words and complies with the type/volume limitations of the Federal Rules of Appellate Procedure 32(a)(7). This Brief was prepared using a proportionally spaced typeface of 14-point. The word count is stated in reliance on Microsoft Word, the word processing system used to prepare this Brief.

 /s/   Gregory M. Erickson

Appellate Case: 23-3050     Page: 33     Date Filed: 01/09/2024 Entry ID: 5351703

## CERTIFICATE OF SERVICE
## FOR DOCUMENTS FILED USING CM/ECF

Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on January 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/    Gregory M. Erickson

28